IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| CHUNGUZKHAN ANARBEKOVICH ISIRAILOV,<br><br>    Petitioner,<br><br>  vs.<br><br>KRISTI NOEM, Secretary, U.S. Department of Homeland Security; SAMUEL OLSON, Field Office Director, St. Paul Field Office, Immigration and Customs Enforcement; and CORY WILLIAMS, Chief Jail Administrator, Polk County Jail,<br><br>    Respondents. | **4:26-cv-00096-SHL-SBJ**<br><br><br>**ORDER** |

## I. INTRODUCTION.

Petitioner Chunguzkhan Anarbekovich Isirailov seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging his detention by U.S. Immigration and Customs Enforcement ("ICE") officials. (ECF 1.) Because the Court concludes that ICE officials lacked a lawful basis for detaining Petitioner, the petition for writ of habeas corpus is GRANTED. Respondents are directed to immediately release Petitioner from custody.

## II. FINDINGS OF FACT.

The material facts are not in dispute. Petitioner is a native of Kyrgyzstan who entered the United States on or about May 25, 2023, in or near Hidalgo, Texas. (ECF 1, ¶ 2; ECF 6-1, ¶ 12.) He did not have a valid unexpired immigrant visa, reentry card, border crossing card, or other valid entry document. (ECF 6-1, ¶ 13.) He did, however, make an appointment through the CBPOne application to obtain an appointment to enter the United States. (ECF 1, ¶ 19.) On the same day that he entered the United States, the U.S. Department of Homeland Security ("DHS") served Petitioner with a Notice to Appear for the purpose of initiating removal proceedings. (ECF 6-1, ¶ 14.) DHS paroled Petitioner into the country pursuant to 8 U.S.C. § 1182(d)(5)(A), which provides for parole into the United States "for urgent humanitarian reasons or significant public benefit." (ECF 1, ¶ 42.)

Petitioner has valid employment authorization that he uses to lawfully work in the United States. (Id., ¶ 25.) On November 20, 2023, he filed an Application for Asylum and Withholding of

Removal, Form I-589, with the Executive Office for Immigration Review ("EOIR"). (ECF 6-1, ¶ 15.) Respondents allege that DHS terminated Petitioner's parole on April 18, 2025, although the mechanism for doing so is unclear. (Id., ¶ 16.) Respondents also have not offered any reason why the "humanitarian reasons or significant public benefit" that led to Petitioner's parole in the first place no longer exist. (ECF 1, ¶ 43.) In any event, Petitioner has never received a termination letter regarding his parole status. (Id., ¶ 20.) He was not taken into custody until February 11, 2026, many months after the putative termination of his parole. (Id., ¶ 17.) This occurred when he was encountered by the Iowa State Patrol ("ISP") while driving a commercial vehicle on Interstate 80 near Mitchellville, Iowa. (Id., ¶ 17.) ISP Troopers stopped him for failing to obey traffic control devices based on Petitioner allegedly bypassing an open weigh station. (Id.) During the stop, an immigration official conducted immigration inquiries and issued a Warrant of Arrest, Form I-200. (Id.) Petitioner remains detained at Polk County Jail in Des Moines, Iowa. (Id., ¶ 18.) He was scheduled to appear before an Immigration Judge on March 5, 2026. (Id.)

## III.   HABEAS CORPUS STANDARD.

Petitioner is entitled to writ of habeas corpus if, as relevant here, "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The right of habeas corpus "extends to those persons challenging the lawfulness of immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citing *Demore v. Kim*, 538 U.S. 510, 517 (2003) and *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001)). Petitioner bears the burden of proving by a preponderance of the evidence that his detention is unlawful. *See Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025).

## IV.   LEGAL ANALYSIS.

The parties have largely focused on whether Petitioner is subject to mandatory detention as an "applicant for admission" under 8 U.S.C. § 1225(b)(1) or rather is governed by 8 U.S.C. § 1226(a), which permits discretionary release for "aliens already in the country." *Jennings v. Rodriguez*, 583 U.S. 281, 289, 303 (2018). Both sides correctly acknowledge that this issue has been heavily litigated in recent months, including in the Southern District of Iowa. *See, e.g.*, *Helbrum v. Williams Olson*, 4:25-cv-00349-SHL-SBJ, 2025 WL 2840273, at *4 (S.D. Iowa Sept. 30, 2025); *Barrajas v. Noem*, No. 4:25-cv-00322-SHL-HCA, 2025 WL 2717650, at *4–5 (S.D. Iowa Sept. 23, 2025); *Hasan v. Crawford*, 800 F. Supp. 3d 641, 651–57 (E.D. Va. 2025); *Romero*

*v. Hyde*, 795 F. Supp. 3d 271, 281–88 (D. Mass. 2025). The Court respectfully disagrees, however, that this is the governing issue here.

The record shows that Petitioner was placed on special humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5)(A) immediately after entering the country. This is not the case for most other petitioners in habeas cases, who instead either entered the United States without inspection at all or were inspected by immigration officials and released pursuant to some sort of bond. Petitioner's parole status placed him in a more favorable position than others who entered the country because it allowed him to remain in the country legally and obtain lawful work authorization.

For present purposes, however, Petitioner's humanitarian parole status places him on somewhat weaker footing than the petitioners in other habeas cases. This is because, in relevant part, § 1182(d)(5)(A) states that "such [humanitarian] parole of such alien shall not be regarded as an admission of the alien." It further states that when the Secretary of Homeland Security decides that the purposes of the humanitarian parole have been satisfied, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.* This language tracks the terminology in § 1225(a)(1) and requires the Court to conclude that Petitioner is—and always has been—an "applicant for admission" as defined in § 1225(a)(1).

This does not mean, however, that Petitioner is automatically subject to mandatory detention pursuant to § 1225(b)(2). To terminate his parole, DHS had to comply with 8 C.F.R. § 212.5(e)(2)(i), which states, in relevant part, that parole may be terminated "upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States . . . ." If one of those conditions is satisfied, "parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole." *Id.* Other provisions of § 212.5 show that the decision to grant parole must be made "on a case-by-case basis." *Id.* § 212.5(b); *see also id.* § 212.5(c) (requiring "review of the individual case"). This is consistent with § 1182(d)(5) itself, which authorizes parole "only on a case-by-case basis."

The record shows that Respondents have failed to comply with the requirements of § 212.5(e)(2)(i) in at least three ways. First, many district courts have concluded that "just as a grant of parole requires an individualized review, revocation of parole requires a case-by-case

3

assessment to comply with the statute." *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 146 (W.D.N.Y. 2025); *see also, e.g.*, *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1138 (D. Or. 2025); *Villegas v. Raycraft*, No. 1:26-cv-528, 2026 WL 642995, at *2–3 (W.D. Mich. Mar. 9, 2026). There is no evidence of an individualized assessment here. To the contrary, Respondents simply assert, baldly, that "[o]n April 18, 2025, DHS exercised its discretion and terminated Petitioners' [sic.] parole." (ECF 6-1, ¶ 16.) This is inconsistent with governing regulations.

Granted, in *Doe v. Noem*, 152 F.4th 272 (1st Cir. 2025), the United States Court of Appeals for the First Circuit concluded that DHS likely did not violate 8 U.S.C. § 1182(d)(5)(A) or 8 C.F.R. §212.5(e)(2)(i) when it decide to issue a blanket termination of a parole program for people from Cuba, Haiti, Nicaragua, and Venezuela without case-by-case analysis. There, however, the record contained information showing that the parole program had been created on a blanket basis in the first instance during the Biden Administration, *see Doe*, 152 F.4th at 279–80, and then terminated during the Trump Administration based on the assessment of the then-Acting Secretary of DHS that "categorical parole programs" were inconsistent with § 1182(d)(5)(A), *id.* at 281. DHS went on to publish a Termination Notice explaining that the program for people from Cuba, Haiti, Nicaragua, and Venezuela "d[id] not serve a significant public benefit, [we]re not necessary to reduce levels of illegal immigration, did not sufficiently mitigate the domestic effects of illegal immigration, [we]re not serving their intended purposes, and [we]re inconsistent with the Administration's foreign policy goals." *Id.* (quoting Termination of Parole Processes for Cubans, Haitians, Nicaraguans, and Venezuelans, 90 Fed. Reg. 13611, 13612 (Mar. 25, 2025). There is nothing in the record to suggest that Petitioner was granted parole as some sort of "categorical" or blanket program here, much less to explain how or why DHS "terminated" his parole. This is a due process problem in and of itself.

Second, and relatedly, Respondents have not shown that DHS ever made the requisite findings for terminating the parole of Petitioner or anyone else. Section 212.5(e)(2)(i) requires a DHS official to conclude that the purpose of parole has been "accomplish[ed] or that "neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States." Although reasonable minds can differ about how far the requisite DHS official must go to explain the basis for these findings, Respondents here have not established that any DHS officials made any findings at all. Thus, again, there has not been compliance with governing laws and regulations. *See Villegas*, 2026 WL 642995, at *3 (granting habeas relief where "Respondents

4

make no argument about whether the requirements for termination of parole in § 1182(d)(5)(A) and its regulations have been satisfied"); *Mata Velasquez*, 794 F. Supp. 3d at 146 (similar).

Third, and finally, § 212.5(e)(2)(i) requires "written notice to the alien" when parole is terminated. Petitioner received no "written notice" here. Thus, even if immigration officials had made an individualized determination as to Petitioner *and* made the requisite findings under § 212.5(e)(2)(i), Petitioner has established a violation of his due process rights. *See Torres v. Hermosillo*, No. 2:25-cv-02687, 2026 WL 145715, at *6–8 (W.D. Wash. Jan. 20, 2026) (granting habeas relief where there was no evidence of written notice to petitioner regarding termination of parole).

The final question is what relief to award. In some circumstances, the Court has ordered a bond hearing rather than outright release when there are changed circumstances such as an alien being charged with a new criminal offense while on release. Here, however, Respondents have not argued that Petitioner's alleged violation for bypassing the weigh station—which is essentially just a traffic offense—would justify termination of his parole. Instead, their sole argument is that his parole was already terminated in April 2025. As there is nothing in the record to suggest that immigration officials complied with governing laws and regulations when they purportedly terminated his parole at that time, there was no lawful basis for taking him into custody on February 11, 2026. Immediate release is the appropriate remedy in these circumstances. *See Ahmed M. v. Bondi*, No. 25-cv-4711, 2026 WL 25627, at *3 (D. Minn. Jan. 5, 2026) ("[R]elease is an available and appropriate remedy for detention that lacks a lawful predicate." (internal quotation marks omitted)).[1]

## V.    CONCLUSION.

Based on the foregoing, IT IS ORDERED THAT:

1. Petitioner's Petition for Writ of Habeas Corpus (ECF 1) is GRANTED.

2. Respondents must immediately release Petitioner from custody. Respondents shall release him with all of his personal effects, including but not limited to purse/wallet, driver's license, immigration papers, passport, cell phones, and keys.

---

[1] Respondents also argue that they cannot afford him a bond hearing before an Immigration Judge because any such relief can be effectuated only by the Attorney General or an official with the Executive Office for Immigration Review, neither of whom as a party here. (ECF 6, p. 4.) This argument is immaterial in light of the Court's decision to order immediate release.

3. Within three days of the date of this Order, the Parties shall confirm that Petitioner has been released as required by this Order.

**IT IS SO ORDERED.**

Dated: March 12, 2026

_____

Stephen H. Locher
UNITED STATES DISTRICT JUDGE